In the Matter of the MARRIAGE OF Elizabeth BRADDOCK and David M. Heimer.

No. 06–00–00127–CV.

Court of Appeals of Texas, Texarkana.

Submitted Nov. 8, 2001.

Decided Dec. 12, 2001.

Troy A. Hornsby, Miller, James, Miller & Hornsby, LLP, Texarkana, for appellant.

Robert Rolston, Rolston & Cobern Law Firm, LLP, Mount Pleasant, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

WILLIAM J. CORNELIUS, Chief Justice.

This is an appeal from a judgment in a suit for divorce from a common-law marriage. David Heimer appeals, raising several challenges to the legal and factual sufficiency of the evidence supporting the trial court's judgment.

In October of 1994 Elizabeth Braddock and David Heimer began living together in Braddock's home. They had married and divorced each other several years earlier. In order to raise money to satisfy a tax debt, Braddock conveyed two pieces of

real property to Heimer for $45,000.00. Heimer borrowed the $45,000.00 from a bank. Braddock personally guaranteed the loan and made the loan payments. Heimer refused to reconvey the property to Braddock, and Braddock sued for divorce from their common-law marriage. The trial court found that Braddock and Heimer had not effected a valid common-law marriage. The court also found that Heimer promised to reconvey the property to Braddock after Braddock had paid back some portion of the $45,000.00; that Heimer breached this promise; that Heimer and Braddock were in a confidential relationship; and that Braddock was therefore entitled to have this property placed in a constructive trust so that it could be sold and the proceeds divided equally between the parties after payment of the debt and sale costs.

■■■■ Findings of fact entered in a case tried to the court are of the same force and dignity as a jury's answers to jury questions. The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991).

■■■■ In considering a legal sufficiency or no evidence point, we consider only the evidence that tends to support the findings of the court and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); *Worsham Steel Co. v. Arias*, 831 S.W.2d 81, 83 (Tex.App.—El Paso 1992, no writ). A no evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital

fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L.REV. 361, 362–63 (1960). More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex.1994). When we sustain a no evidence point, we render judgment for the appellant. *Vista Chevrolet, Inc. v. Lewis*, 709 S.W.2d 176 (Tex.1986).

■■■■ A factual sufficiency challenge requires us to examine all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *See In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). In an appeal from a bench trial, we cannot substitute our conclusions for those of the trial court if there is sufficient competent evidence of probative force to support the trial court's findings. *Lindsey v. Lindsey*, 965 S.W.2d 589, 591 (Tex. App.—El Paso 1998, no pet.). If the factual sufficiency challenge is sustained, we explain in detail how the contrary evidence greatly outweighs the evidence supporting the verdict, *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex.1998), and reverse and remand the cause for a new trial. *Ames v. Ames*, 776 S.W.2d 154, 158 (Tex.1989).

■■■■ Heimer first disputes the legal and factual sufficiency of the evidence supporting the trial court's finding that he breached a promise to reconvey the real property to Braddock. Braddock argues that a factual sufficiency complaint has not been preserved for appeal because it was

not raised in a motion for new trial with sufficient specificity to state clearly the nature of the complaint. TEX.R. CIV. P. 324 provides that a motion for new trial is a prerequisite to appeal on the basis of insufficient evidence only in a jury trial. In nonjury cases, a motion for new trial is not a requirement to attack on appeal either the legal or factual sufficiency of the evidence. *Owen v. Porter,* 796 S.W.2d 265, 268 (Tex.App.—San Antonio 1990, no writ); *Farmer's Mut. Protective Ass'n v. Wright,* 702 S.W.2d 295, 296–97 (Tex.App.—Eastland 1985, no writ). We therefore may properly review both the legal and factual sufficiency of the trial court's findings.

The trial court found that Heimer agreed with Braddock to reconvey the property to her sometime after the loan for the $45,000.00 was obtained and that Heimer refused to do so. Heimer denies the existence of any agreement. He argues in the alternative that if an agreement did exist, Braddock's own trial testimony shows that the agreement was to reconvey the property when the $45,000.00 loan had been fully paid back or "close to it." Because the loan was not fully paid or nearly paid when Braddock requested a reconveyance, Heimer argues, he did not breach any agreement by failing to reconvey the property. To this, Braddock answers that Heimer committed anticipatory repudiation.

▇▇▇ Repudiation may be proven by words or actions by a contracting party that indicate he is not going to perform his contract in the future. *Chavez v. Chavez,* 577 S.W.2d 306, 307 (Tex.Civ.App.—El Paso 1979, writ ref'd n.r.e.). It is conduct that shows a fixed intention to abandon, renounce, and refuse to perform the contract. *Hubble v. Lone Star Contracting Corp.,* 883 S.W.2d 379, 382 (Tex.App.—Fort Worth 1994, writ denied). Braddock testified that Heimer told her that he was

not going to reconvey the property. Heimer testified that he had never agreed to reconvey the property, that he and Braddock had several conversations on the matter, and that he told her he was not going to reconvey the property to her. On appeal, Heimer presents no argument on the issue of anticipatory repudiation. The trial court made no explicit finding that Heimer committed an anticipatory breach. Nevertheless, we will assume that the trial court made implied findings of fact that support its ruling as long as those findings are supported by the record, and we will affirm the trial court's decision if it is correct on any theory of law applicable to the case. *Point Lookout W., Inc. v. Whorton,* 742 S.W.2d 277, 278 (Tex.1987). Although the evidence is conflicting, it is legally and factually sufficient to support the trial court's finding that an agreement existed and that Heimer committed an anticipatory breach of it. We may not interfere with the fact finder's resolution of conflicts in the evidence. *See Am.'s Favorite Chicken Co. v. Samaras,* 929 S.W.2d 617, 628–29 (Tex.App.—San Antonio 1996, writ denied).

▇▇▇ The second issue is whether the evidence is legally and factually sufficient to establish the existence of a confidential relationship between Heimer and Braddock. The existence of a confidential relationship giving rise to an informal fiduciary relationship is ordinarily a question of fact. *Thigpen v. Locke,* 363 S.W.2d 247, 253 (Tex.1962). However, when the issue is one of no evidence, it becomes a question of law. *Id.* A confidential relationship giving rise to an informal fiduciary relationship may arise from moral, social, domestic, or purely personal relationships. The existence of the fiduciary relationship is to be determined from the actualities of the relationship between the persons involved. Heimer's sole argument on appeal

is that there must be unequal bargaining power between the parties for there to be a confidential relationship giving rise to an informal fiduciary relationship. He contends Braddock did not prove the existence of unequal bargaining power between himself and Braddock.

Heimer relies on *Lovell v. W. Nat'l Life Ins. Co.*, 754 S.W.2d 298 (Tex. App.—Amarillo 1988, writ denied). *Lovell* does not support Heimer's argument. That case holds that the duty of good faith and fair dealing exists only if intentionally created by express language in a contract or unless a special relationship of trust and confidence exists between the parties to the contract. *Id.* at 302 (citing *Arnold v. Nat'l County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987); *English v. Fischer*, 660 S.W.2d 521, 524 (Tex.1983) (Spears, J., concurring)). The special relationship necessary to create such a duty of good faith and fair dealing arises *either* from the element of trust necessary to accomplish the goals of the contract, or has been imposed by the courts because of an imbalance of bargaining power. *Lovell*, 754 S.W.2d at 302 (citing *English v. Fischer*, 660 S.W.2d at 524 (Spears, J., concurring)). Thus, even assuming that no imbalance of bargaining power has been shown by Braddock, the trial court could have found the confidential relationship creating a fiduciary duty to have arisen from the element of trust necessary to accomplish the agreement. The evidence shows that Braddock placed a great deal of trust in Heimer. She was previously married to him. She allowed him to move in with her again on her property five years after they were divorced. Heimer contends that Braddock did not support him, yet admits that for approximately ten months while living with Braddock he was unemployed after he quit his job. Braddock allowed Heimer to write checks on her banking account, which eventually became a joint banking account, and she entrusted him with her financial affairs. We conclude that the evidence is legally and factually sufficient to show the existence of a confidential relationship between Heimer and Braddock.

The third issue is two-fold: whether as a matter of law the breach of an agreement to reconvey real property may legally satisfy the fraud requirement for imposing a constructive trust; and whether the evidence is legally and factually sufficient to satisfy the fraud requirement for imposing a constructive trust. Heimer argues that even if the evidence shows an agreement to reconvey and a breach of such agreement, fraud is necessary to establish a constructive trust, and a breach of the agreement alone is insufficient evidence of fraud. He contends that without greater evidence of fraud, such as proof that he never intended to reconvey the property even though he had agreed to do so, a constructive trust may not be imposed.

A constructive trust is not actually a trust, but is an equitable remedy imposed by law to prevent unjust enrichment resulting from an unconscionable act. *Ellisor v. Ellisor*, 630 S.W.2d 746, 748 (Tex.App.—Houston [1st Dist.] 1982, no writ). Likewise, a constructive trust is imposed as an equitable remedy where there is a confidential relationship between a grantor and a grantee, and the grantor relies on the oral promise of the grantee to reconvey the property. *Stout v. Clayton*, 674 S.W.2d 821, 823 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.). The courts will not ordinarily enforce an oral contract, but instead will impose a constructive trust based on the violation of a fiduciary duty and to prevent unjust enrichment. *Omohundro v. Matthews*, 161 Tex. 367, 341 S.W.2d 401, 405 (1960). An express agreement between the parties is not needed to

create a constructive trust. It is imposed by law because the person holding title to the property would profit by wrongdoing or would be unjustly enriched if he were permitted to retain the property. *Id.* at 405; *Hudspeth v. Stoker*, 644 S.W.2d 92, 94 (Tex.App.—San Antonio 1982, writ ref'd).

 To justify imposing a constructive trust, either actual fraud or constructive fraud must be present. *Exploration Co. v. Vega Oil & Gas Co.*, 843 S.W.2d 123, 127 (Tex.App.—Houston [14th Dist.] 1992, writ denied); *Rogers v. Winn*, 329 S.W.2d 319, 324 (Tex.Civ.App.—San Antonio 1959, writ ref'd n.r.e.). Where the grantor voluntarily conveys to the grantee on a false oral promise that the grantee will reconvey, there is actual fraud justifying the imposition of a constructive trust. *Thigpen v. Locke*, 363 S.W.2d at 250. But even if the transferee received the property when he intended to perform his promise and was not guilty of fraud in acquiring it, and even though the transferee did not take improper advantage of the confidential relationship in procuring the transfer and was not guilty of using undue influence, a constructive trust may still be appropriate because the abuse of the confidential relationship consists in the failure to perform the promise. *Mills v. Gray*, 147 Tex. 33, 210 S.W.2d 985, 988 (1948). The failure to perform the promise is constructive fraud that will give rise to a constructive trust. We therefore hold that within the context of a confidential relationship, the breach of an agreement to reconvey real property may constitute constructive fraud and therefore legally satisfy the fraud requirement for imposing a constructive trust.

 In our case, the trial court found that a confidential relationship existed; an agreement to reconvey the property to Braddock existed; Braddock was induced to sign the deed conveying the property to Heimer by the agreement and the confidential relationship; and Braddock breached the agreement. The court did not specify whether it found that Heimer committed actual or constructive fraud. We have already upheld the trial court's determinations that a confidential relationship existed, that the agreement existed, and that Heimer breached it. Therefore, we have already upheld a case for constructive fraud. Furthermore, there is sufficient evidence to support the trial court's conclusion that actual fraud existed. Heimer consistently maintained that he never agreed to reconvey the property. It is not an unreasonable inference to conclude that a person who makes an agreement and later denies its existence never intended to fulfill the agreement in the first instance. There was also additional evidence of Heimer's fraudulent behavior. Heimer admitted that while he was living with Braddock and drawing money from her account to pay living expenses, he kept undisclosed from her the existence of a bank account containing approximately $35,000.00. Braddock's testimony was that Heimer had told her that he had received nothing from his parents' estate, the source of the money. Given this evidence, the court was authorized to implicitly find that sufficient fraud was committed, either actual or constructive, to establish a constructive trust.

The fourth and fifth issues may be discussed together. The fourth issue is whether the evidence is legally and factually sufficient to establish that Heimer was entitled to reimbursement for assets expended for enhancing the real property. The fifth issue is whether the evidence is legally and factually sufficient to establish that Heimer was entitled to reimbursement for assets expended to benefit the community estate or Braddock's separate

estate. In Heimer's answer, he conditioned his requests for reimbursement on the court's finding of an informal marriage. He raised no alternative theory for reimbursement if the court should find no marriage existed. The court found that no informal marriage existed. Thus, it properly did not consider further his claims for reimbursement. Heimer suggests in a footnote that the theory of *quantum meruit* applies here, but he fails to present any argument or cite any case explaining why we should consider this theory for the first time on appeal, or even how the evidence establishes the elements of *quantum meruit*.

For the reasons stated, we affirm the trial court's judgment.